755 So.2d 1273 (2000)
William D. GARDNER, Jr., Joe C. Gardner, Jr. And William D. Gardner, Sr., Appellants,
v.
Travis L. LITTLE, Taft F. Little and Bill T. Little, Appellees.
No. 1998-CA-01786-COA.
Court of Appeals of Mississippi.
February 8, 2000.
*1274 J. Max Edwards, Jr., Tupelo, Attorney for Appellants.
Wendell H. Trapp, Jr., Corinth, Attorney for Appellees.
BEFORE KING, P.J., DIAZ, AND IRVING, JJ.
KING, P.J., for the Court:
¶ 1. This appeal arises from the Alcorn County Circuit Court's judgment of October 26, 1998, sustaining the Little's motion for summary judgment. The trial court found that the Littles did not misrepresent the financial status of Action Motors, Inc. when they agreed to sell 40% of its stock to the Gardners. We find no error and, accordingly, affirm the judgment of the trial court.

FACTS
¶ 2. On April 1, 1992, the Gardners and the Littles entered into a stock purchase agreement. The agreement provided that the Gardners would purchase 40% of the stock of Action Motors, Inc. (Action), and actively participate in the car dealership. Subsequent to the execution of the agreement, the parties signed an addendum to the purchase agreement. The addendum added the following disclaimer: "Sellers do not warrant the absolute accuracy of any financial statements, and Purchasers are not relying on any of same to consummate this transaction." The Gardners and the Littles later disagreed on the interpretation of this provision. The Gardners claimed to have relied on the general accuracy of the financial statement in making a decision to purchase stock in Action. According to the Littles, this provision warned purchasers not to rely on the financial statements at all.
¶ 3. During the course of negotiations, the Gardners received written representation that the net worth of Action was *1275 $113,751. In addition to this representation, Taft Little, in a meeting held on March 24, 1992, had orally "guaranteed" that the corporation's net worth was $100,000.
¶ 4. On April 2, 1992, the Gardners assumed day to day management of Action. Subsequent to the assumption of day to day management, the Gardners hired an accounting firm to review Action's books. The firm found inconsistencies and misstatements of the net worth of Action. According to a report submitted by the firm on April, 27, 1992, the actual net worth of Action was a negative $545,982. According to accountant Stephen Ross, many of the discrepancies listed on the corporation's balance sheet resulted from misrepresented retained earnings, which should have been increased to a negative $506,000. The balance sheet errors, totaling approximately a negative $460,000, also required adjusting. During the accounting review, the Gardners discovered that Ford Motor Credit Company had previously given Action notice of cancellation of its floor plan financing. To remain open, Action was required to infuse additional capital of $200,000 by April 1, 1992. This was the same day the stock purchase agreement was finalized.
¶ 5. Despite the financial inconsistencies, the Gardners continued to participate in the management of the corporation. On July 8, 1993, Travis Little negotiated and secured a loan of $400,000 with People's Bank and Trust Company without notifying the Gardners. In addition to the shareholders, Dan Gardner, Sr., who was not an investor in the corporation, was asked to sign the promissory note. To prevent the corporation from folding, Dan Gardner, Sr. signed the note.
¶ 6. In November of 1998, after nineteen months of managing the corporation, the Gardners filed a complaint against the Littles alleging misrepresentation. The complaint requested that the court rescind the contract, return the $200,000 stock purchase price, and release the Gardners from all debts of Action. In addition, the Gardners asked that the court award consequential damages, together with reasonable attorney's fees. The Littles filed a motion for summary judgment which the Alcorn County Circuit court granted.

ANALYSIS OF THE ISSUES AND LAW

I

Whether the trial court erred in granting the Littles' motion for summary judgment?
¶ 7. The Gardners contend that the chancellor erred in granting the Littles' motion for summary judgment because the addendum to the stock purchase agreement contained material ambiguities and because the agreement was obtained by misrepresentation. When we are asked to review a lower court's grant of summary judgment, we employ a de novo standard of review. Seymour v. Brunswick Corp., 655 So.2d 892, 894 (Miss.1995) (citing Short v. Columbus Rubber & Gasket Co., 535 So.2d 61, 63 (Miss.1988)). In applying a standard, we review all evidentiary matters before us in the record: affidavits, depositions, admissions, interrogatories, etc. Seymour v. Brunswick, 655 So.2d at 894. The evidence is viewed in the light most favorable to the nonmoving parties, and they are given the benefit of every reasonable doubt. Mississippi Ins. Guar. Ass'n v. Harkins & Co., 652 So.2d 732, 735 (Miss.1995). Summary judgment lies only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Id. To prevent summary judgment, the non-moving party must establish a genuine issue of material fact by means allowable under the rule. Baptiste v. Jitney Jungle Stores of *1276 Am., 651 So.2d 1063, 1065 (Miss.1995) (citing Lyle v. Mladinich, 584 So.2d 397, 398 (Miss.1991)). Having applied this standard, this Court finds that there were no material issues of disputed fact.
¶ 8. We agree with the trial court and are persuaded that, in this case, the Gardners failed to protect their interests. On March 24, 1992, prior to the stock purchase, a meeting was held between the Gardners and the Littles. The Gardners had ample opportunity to investigate the financial status of the corporation prior to the April 1st stock purchase. The addendum states that the Gardners have had access to all necessary financial records, information, and ample time to review that information and formulate an independent conclusion. There is nothing in the record to indicate that the Littles made any effort to conceal Action's financial status or to prevent access to any requested document. The record indicates that the Gardners entered into the stock purchase agreement with knowledge of financial discrepancies. They signed the addendum to the purchase agreement, which warned the purchasers not to rely on the absolute accuracy of the financial statement. The Gardners chose to investigate after purchasing the stock and assuming day to day management of the corporation. Despite the Gardners discovery of Action's financial difficulties, they continued to manage the corporation for nineteen months.
¶ 9. Moreover, the Gardners waived their option to rescind the contract by managing and operating the corporation after discovery of the Littles' alleged fraud. "[S]tated in general terms,... assuming the fact of fraud, a contract obligation obtained by fraudulent representation is not void, but voidable. Upon discovery thereof, the one defrauded must act promptly and finally to repudiate the agreement; however, a continuance to ratify the contract terms constitutes a waiver." Turner v. Wakefield, 481 So.2d 846, 848-49 (Miss.1985) (citing Stoner v. Marshall, 145 Colo. 352, 358 P.2d 1021, 1022-23 (1961)). See also Bankers' Mortgage Co. v. McMullen, 165 Miss. 382, 141 So. 331, 334 (1932). As with any contract, both parties have a responsibility to ensure that their interests are protected. In the instant case, the Gardners failed to do that. If the Gardners felt that the Littles misrepresented the corporation's net worth or acted in bad faith, then they were required to either promptly rescind the contract or affirm the contract and maintain an action in damages. Id. However, neither remedy was sought.
¶ 10. Based on the specific facts of this case, we are obligated to agree with the trial court that summary judgment was proper. We, therefore, affirm the judgment of the trial court.
¶ 11. THE JUDGMENT OF THE ACORN COUNTY CIRCUIT COURT GRANTING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEES IS AFFIRMED. APPELLANTS ARE TAXED WITH ALL COSTS OF THIS APPEAL.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.