SOUTHWICK, P.J.,
for the Court:
¶ 1. Laurie Meeks sought to have terms of an agreed property settlement and support agreement modified eight months after it was entered. The chancellor determined that there were no material and unanticipated changes in circumstances that would justify a modification. Mrs. Meeks appeals and argues that the chancellor’s finding was erroneous and that additional child support should be paid. Various issues are raised that allegedly flow from that error. With the exception of the chancellor’s failure to address withholding of support payments from Sean Meeks’s paycheck, we find no clear error committed by the chancellor and affirm. We reverse and remand as to withholding.
FACTS
¶ 2. Laurie Lynn Meeks and Sean Justin Meeks were married on December 14, 1991. One child, Jacob Hunter Meeks, was born during their marriage. On May 6, 1997, the couple agreed to a divorce based on irreconcilable differences. The divorce decree imposed weekly child support obligations on Mr. Meeks and required him to maintain an insurance policy on Jacob, as well as pay one-half of the child’s medical expenses. Primary custody was given to the mother, but the father had substantial visitation rights. A property settlement agreement was also entered.
¶ 3. Eight months later, on January 13, 1998, Mrs. Meeks filed a complaint seeking a variety of relief. She wished to increase the amount of child support, to require her former husband to pay his portion of the medical expenses incurred for the child, and to have Mr. Meeks found in contempt for failing to comply with various portions of the divorce decree. Mr. Meeks filed a counterclaim seeking a change in primary custody because of an alleged substantial and material change in circumstances adverse to the welfare of the child.
¶ 4. An order was entered on May 26, 1998, resolving the issues raised by Mr. Meeks’s counterclaim. That order has not been appealed.
¶ 5. On June 17, 1998, a separate hearing was held on the merits of Mrs. Meeks’s complaint. Both former spouses testified and there were no other witnesses. The chancellor denied all relief.
DISCUSSION
¶ 6. We are presented with seven numbered issues. For convenience, we combine some of them.

I. Proof of material change in circumstance

¶ 7. Mrs. Meeks argues that soon after the May 1997 divorce, her income dropped due to her loss of a well-paying job; she argued that her ex-husband’s income increased. The chancellor was unpersuaded that a substantial and unanticipated change in the parties’ circumstances had occurred.
¶ 8. Mrs. Meeks is correct that a child support award may be altered if it is shown that there has been a substantial change in the circumstances of either parent or the child arising subsequent to the earlier decree. Overstreet v. Overstreet, 692 So.2d 88, 92 (Miss.1997). If substantial evidence supports the chancellor’s findings of fact on these issues, those findings are beyond this Court’s power to disturb. Morris v. Morris, 541 So.2d 1040, 1042 (Miss.1989).
¶ 9. Slight changes in the father’s income or children’s expenses do not constitute a material change in circumstances requiring an increase in the father’s child support obligations. Tedford v. Dempsey, *367 437 So.2d 410, 418 (Miss.1983). In addition, changes in support obligations should only occur because of material “changes occurring after the original decree and not anticipated by the parties at the time of the agreement.” Shipley v. Ferguson, 638 So.2d 1295, 1298 (Miss.1994). Making anticipation a factor is not just an example of stray words making their way into court opinions. Unlike other litigation in which what is done usually remains done, a domestic relations case is subject to frequent petitions to address new matters that arise after the earlier decree. However, that is not an unfettered opportunity to undermine previous decisions. What the supreme court requires is that the justification for a change in custody, support, or alimony be events for which allowance could not reasonably have been made at the time of the previous ruling.
¶ 10. At the hearing during which both parents testified, the chancellor heard confusing and elliptical testimony. Mrs. Meeks testified that she had been earning a $30,000 annual salary working for her physician father. By the time of the hearing in June 1998 her father was retired and she had lost that job. She stated that she started a new job on March 30, 1998, working for a hospital for $150 per week. She was then terminated from that job near the end of May 1998 and was exploring recertification as a teacher. What makes this confusing is that she indicated that she had worked for the hospital for about ten months at the time of being terminated, which would mean that she started in July 1997 and not March 1998. If she found a new job about two months after the divorce decree was entered in May 1997, and since even before starting the new job she said that she knew that her father was retiring, this raises serious concerns about what she knew at the time of the divorce.
¶ 11. All we can say is that the record is confused and incomplete. The chancellor in his order denying modification said generally that the “parties should have anticipated at the time they signed the agreement [in May 1997] all issues raised at this time.” The party seeking modification has the burden of proving entitlement to it, which includes proof on the issue of the unexpected nature to the changes in circumstances. The record reveals suspicions and few hard facts.
¶ 12. Mr. Meeks’s financial situation was also the subject of considerable scrutiny. He testified that he was still employed by the company for which he had worked at the time of the divorce. Since that time, he had received a promotion and an increase in pay. He earned an average of about $535 per week from his work with Intex at the time of the hearing. He estimated that his income for 1997 was approximately $30,000 in base salary but an additional $15,000 in overtime pay. Considerable debate among the parties and their counsel arose as to whether this $15,000 actually represented money from a second job of welding. No direct evidence of anything but incidental income from welding was introduced.- Mrs. Meeks agreed that while the parties were still married her husband was being trained and working on his certification as a welder.
¶ 13. One problem with the evidence is that Mr. Meeks did not submit a financial statement in accordance with Chancery Rule 8.05. Whether such a written statement would have been any clearer than the testimony might be doubted, though the filing is supposed to include recent tax returns and other documents. As we point out below, the only relevant tax return had not yet been prepared.. The rule itself states that filing can be excused for good cause. Unif. Ch. Ct. R. 8.05; see Bland v. Bland, 629 So.2d 582, 587 (Miss.1993) (based on the chancellor’s rulings, supreme court assumed that the chancellor excused the need for a financial statement). The one relevant reference in the record is that an objection was made to Mr. Meeks’s testifying about his income without having submitted the required financial state *368 ment. The chancellor overruled the objection since “it is important for me to hear this information.” We find no ease law that failure to file the statement per se creates a barrier to that party’s making a financial presentation at a hearing.
¶ 14. Mr. Meeks testified that his income from his primary employer would for the foreseeable future be lower than the previous year because of a downturn in business. Several co-workers had been terminated and overtime pay1 was largely eliminated. It was $15,000 in overtime that allegedly made his income fifty percent larger than it otherwise would have been. Thus it was important ■ to know whether any welding income was or would be earned. Mrs. Meeks testified that she did not know what if any income her former husband ever made from welding. Mr. Meeks testified that he had earned less than $5,000 from- welding in 1997. Though the hearing was in June 1998, he had received an extension on his income tax return and therefore the reported figure was not yet available. One payment stub from a paycheck was about the only documentation. The chancellor was left with a very unsatisfactory basis on which to rule. It is fair to say that no clear evidence indicated whether Mr. Meeks was making the same income as he was at the time of the divorce. His own testimony indicated that he would be making less because of the elimination of overtime payments.
¶ 15. We encourage chancellors to require that tax returns and other documentation listed in Chancery Rule 8.05 be provided. We also encourage parties to prepare for evidentiary hearings by assuring that the chancellor will have not only their own but the opposing party’s financial information. It is true that the previous year’s tax return for Mr. Meeks did not yet exist. That would have been the only tax return since the divorce. The chancellor may have decided that no better information could have been available at the time of the hearing anyway.
¶ 16. One other feature of the issue of modification is the precise language that the chancellor used in his final judgment:
To allow either party to now seek to modify a judgment this soon, would render the whole purposes of agreed divorces useless. The parties should have anticipated at the time they signed the agreement, all the issues raised ,at this time.,.
¶ 17. Each sentence focuses on a separate point, one being the suddenness of the request .for modification and the other being that the reasons for the requested modifications should have been anticipated. Though the chancellor was concerned about the abruptness of the return to court, he did grant a hearing to determine whether grounds for modification exist. That he expressed concern that one party filed a modification request only eight months after entering an agreement is understandable. That he did not let that concern block a review of the basis for the request is essential. “It makes no difference if the petition [for modification] is filed 30 days, 90 days or 2 years after the divorce was granted. It [is] a denial of ... due process for the chancellor to deny [a] motion without a hearing where [the petitioner] is given the opportunity to provide factual support for the, allegation ... that there has been a material change in circumstances since the rendering of the former decree.” Childers v. Childers, 717 So.2d 1279, 1281 (Miss.1998).
¶ 18. Here there was a hearing provided. The evidence presented has already been described. The chancellor was eminently correct that an unanticipated change in circumstances must be shown. We find the evidence lacking as to whether Mr. Meeks’s income had increased or decreased, and whether Mrs. Meeks’s departure from working with her father was immediately on the heels of the property settlement agreement in May 1997 or whether it occurred the following year.
*369 ¶ 19. A quite recent supreme court case demonstrates that the chancellor’s focus on the abruptness of the claim of changed circumstances was correct. Haddon v. Haddon, 97-CT-01453-SCT, — So.2d -, 2000 WL 330348 (Miss. March 30, 2000). The issue there wás a visitation schedule, which does not require proof of a change in circumstances. Id. at (¶ 12). Yet even without the need to show a change, the supreme court reversed the modification of visitation because “little or nothing had happened between that time [of the original divorce] and Scott’s complaint for modification that could not have been reasonably anticipated by the parties.” Id. at (¶ 13).
¶ 20. Another precedent that we previously cited also was acutely concerned about the shortness of time between the original decree and the request for modification. Morris, 541 So.2d at 1043. The court emphasized that the four months between original decree and request for modification was shorter than the period in any other precedent in which modification was permitted. Id. “When, as in this case, a provision for periodic alimony is based upon the agreement of the parties, that provision should not be modified without close scrutiny, especially where so short a time, here six months, separates the decree and the hearing for modification.” Id., quoting Roberts v. Roberts, 395 So.2d 1035, 1037 (Ala.Civ.App.1981).
¶21. The close scrutiny given by the chancellor in the present case left him to conclude that the evidence of a meaningful unanticipated change in circumstances was lacking. We find no manifest error on this record in the trial court’s conclusion that a basis for modification had not been shown.
¶ 22. This is not to prevent either spouse from stating in the future that the circumstances then-existing demonstrate the required unanticipated change. Mr. Meeks’s income may not be so uncertain; Mrs. Meeks’s financial picture may also be clearer.

II. Withholding order

¶23. On appeal Mrs. Meeks requests that a withholding order be instituted against her former husband for child support payments because of alleged delays in these payments. Mr. Meeks denied that any delay was occurring. The controlling statute states in relevant part:
Upon entry of any order for support by a court of this state ... issued or modified or found to be in arrears on or after January 1, 1994, the court entering such order shall enter a separate order for withholding which shall take effect immediately. Such orders shall not be subject to immediate income withholding under this subsection (a) if one (1) of the parties (i.e. noncustodial or custodial parent) demonstrates, and the court finds, that there is good cause not to require immediate income withholding, or (b) if both parties agree in writing to an alternative arrangement.
Miss.Code Ann. § 93-11-103(2) (Supp. 1999). Neither the divorce decree nor the property settlement discuss an alternative to a withholding order for child support. The decree merely directs that $55 be paid per week for support and maintenance of young Jacob.
¶ 24. In the amended complaint filed April 23, 1998, Mrs. Meeks sought to have a withholding order entered. One reference to this request occurred at the hearing when Mrs. Meeks’s counsel said, “[A]re you still asking that there be a withholding order entered so that you could have that paid directly by his employer?” Mrs. Meeks responded, “I feel like it will be better that way. It would cut down contact between the two of us.” The final judgment does not allude to withholding.
¶ 25. Because of the mandatory language of the statute on withholding orders, and the fact that the matter was raised both in pleadings and at the hearing, we find clear error in failing either to enter such an order or to give reasons as to why it was not justified. We remand on this issue.

*370
III. Failure to pay medical expenses

¶ 26. Mr. Meeks allegedly did not pay one-half of a specific medical expense incurred on his son’s behalf as directed by the final divorce decree. Mr. Meeks agrees that this obligation exists but that he has not refused to comply. The bill in question is about $1,000 and arose from treatment a year before the divorce decree. Much earlier Mr. Meeks had asked for an itemization of the bill. Mrs. Meeks had recently received the itemization and gave it to Mr. Meeks as a result of the hearing.
¶ 27. The original decree made Mr. Meeks responsible for half the medical expenses. Mr. Meeks remains responsible for his share of any medical bills covered by the language of the decree. Should he fail to uphold his obligation, that can be presented to the chancellor. There was nothing before the chancellor at the time of the hearing to suggest that judicial intervention to enforce that obligation was then needed.

IV. Contempt

¶ 28. Mrs. Meeks sought to have her former husband held in contempt for failing to pay his portion of the medicai expenses, as well as for failing to relieve her of a specific financial liability as directed by the divorce decree. The chancellor found no basis on which to hold Mr. Meeks in contempt. These “contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than we are.” Morreale v. Morreale, 646 So.2d 1264, 1267 (Miss.1994).
¶29. The property settlement required Mr. Meeks to have his former wife’s name removed from the mortgage of the marital home. In return, Mrs. Meeks was to convey her interest in the house to him. Soon after the property settlement was executed, the house was destroyed by fire. Testimony at the hearing indicated that insurance proceeds would be used to pay the balance of the mortgage, thus extinguishing Mrs. Meeks’s liability. At the time of the hearing, however, no payment of the insurance had yet been made.
¶ 30. Mr. Meeks testified that he had attempted to comply with the property settlement, but removal of a debtor’s name from the mortgage was within the creditor’s discretion. In addition, his inquiries to the bank about refinancing the home solely in his name were unsuccessful. We note that the property settlement agreement did not specify a date by which the transfer was required to be completed. Accordingly, he was obligated to perform this task within a reasonable time or present evidence as to why he could not do so.
¶ 31. Since the insurance proceeds had not yet been received, it was premature to conclude that Mr. Meeks had failed to comply with his obligation. Once the insurance payment is received, Mrs. Meeks can seek the chancellor’s assistance should her release from this obligation not be forthcoming. The chancellor did not abuse his discretion in rejecting the argument that Mr. Meeks had been in contempt for his actions up until that time.
■ ¶ 32. THE JUDGMENT OF THE AL-CORN COUNTY CHANCERY COURT IS AFFIRMED ON ALL ISSUES EXCEPT AS TO WITHHOLDING FOR CHILD SUPPORT PAYMENTS; ONLY AS TO THAT ISSUE IS THE JUDGMENT REVERSED AND THE CAUSE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED % AGAINST THE APPELLANT AND H AGAINST THE' APPEL-LEE.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.