986 So.2d 981 (2007)
David Gene Burnett BUTT a/k/a David Gene Burnett, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01015-COA.
Court of Appeals of Mississippi.
November 27, 2007.
Rehearing Denied July 22, 2008.
*982 Ray T. Price, Hattiesburg, Attorney for Appellant.
Office of the Attorney General by Ladonna C. Holland, Attorney for Appellee.
Before LEE, P.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. On May 25, 2006, the Circuit Court of Forrest County convicted David Gene Burnett Butt a/k/a David Gene Burnett[1] of *983 Count I bigamy and Counts II and III false pretenses. He was acquitted of Count IV grand larceny. On Counts I and II, the judge sentenced him to ten years each, to run concurrently. On Count III, the judge sentenced him to ten years suspended with five years of post-release supervision. Aggrieved by his conviction, David appeals. He asserts the following issues:
I. The marriage took place in Tennessee; therefore, the Forrest County Circuit Court did not have jurisdiction to hear the case.
II. It was error to refuse jury instruction D-11, which instructed the jury on the ownership of money in a joint account.
III. It was error to allow David's first wife to testify against him.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Sometime in 1998, Margaret Corley met a man who identified himself as David Butt at a square dance in Forrest County, Mississippi. Both individuals were residents of Mississippi. In February 1999, the couple traveled to Sevierville, Tennessee to get married. After their marriage, they remained in Tennessee for a week and then returned to their home in Petal, Mississippi. Approximately three months later, Margaret suffered a stroke, which necessitated that David handle many of her affairs. As a result, Margaret granted David a general power of attorney.
¶ 4. Afterwards, David advised Margaret to withdraw the funds from her IRA and allow him to reinvest them so she could earn more. After getting her permission to reinvest the funds for her retirement, David withdrew over $60,000 from Margaret's IRA and placed it into their joint checking account. He then invested almost $50,000 of the money in a Monex account. Unbeknownst to Margaret, however, David titled the account solely in his name and later withdrew the entire balance. In addition to the $50,000, David also withdrew $7,500 from the remaining IRA funds in their joint account. It was Margaret's uncontradicted testimony at trial that she only allowed David to withdraw her IRA funds so that he could invest them in another account for her. At no point did she give him permission to title the account in his name or to take any of the money for himself.
¶ 5. On August 29, 2003, after David failed to return home, Margaret contacted the Petal Police Department to report him as a missing person. Upon investigation, police discovered that David Butt was actually David Burnett, who was from Florida and had been missing since 1998. David had been married to Pamela Dwyer for almost ten years when, in 1998, he mysteriously disappeared while out on a shrimping boat. In 2002, because he never returned, Pam finally petitioned the Florida court to declare David dead. The court granted her petition and declared David Burnett dead on May 29, 2002, thereby ending their marriage.
¶ 6. David was not heard from after his second disappearance until November 16, 2005, when the Oregon Department of Motor Vehicles reported that a David Burnett presented title to a vehicle purchased from a David Butt. When David disappeared from Petal he left with a truck that Margaret claimed was hers. As a result, Officer *984 David Basset of the Petal Police Department listed the vehicle as stolen on the National Crime Information Center (NCIC) database. Because of that listing, David was caught when he presented the title to the vehicle in Oregon. After the Oregon DMV contacted the Petal Police Department, David was extradited to Mississippi where he was indicted for bigamy, false pretenses, and grand larceny.

ISSUES AND ANALYSIS

I. Jurisdiction
¶ 7. In his first point of error, David claims that the Circuit Court of Forrest County lacked jurisdiction to hear the criminal case against him. He argues that, because his marriage to Margaret took place in Tennessee, jurisdiction was proper in that state and not in Mississippi. Accordingly, he claims the court should have dismissed the charges against him.
¶ 8. Jurisdiction is a question of law and is reviewed de novo. Tyson Breeders, Inc. v. Harrison, 940 So.2d 230, 232(¶ 5) (Miss.2006).
¶ 9. The bigamy statute states, "Every person having a husband or wife living, who shall marry again, . . . shall be guilty of bigamy, and imprisoned in the penitentiary not longer than ten years." Miss. Code Ann. § 97-29-13 (Rev.2006). David contends that this language prohibits only the actual marriage ceremony and not the cohabitation in a bigamous relationship. Accordingly, he argues that the trial court lacked jurisdiction to try him for bigamy because his marriage ceremony took place in Tennessee.
¶ 10. We do not find it is necessary to determine whether the actual marriage ceremony is all that is prohibited or whether the legislature intended bigamous cohabitation to be a violation of section 97-29-13. Instead, we look to Mississippi Code Annotated section 99-11-17 (Rev. 2000), which provides that, when an offense is commenced in Mississippi and consummated out of state, an accused may be indicted and tried in the county in which an offense was commenced.
¶ 11. In this case, it is clear from the testimony that David, while at home in Forrest County, planned to take Margaret out of state to marry her. Similarly, in Evans v. State, 725 So.2d 613, 667 (¶ 227) (Miss.1997), the supreme court found that it was proper to try a case in Harrison County, Mississippi for a murder that was committed in Louisiana. Id. In Evans, the supreme court found that the kidnaping that led to the sexual assault and murder commenced in Harrison County; therefore, venue and jurisdiction to try Evans for all of the crimes were proper there. Id.
¶ 12. David and Margaret lived in Forrest County, and it was there that David decided and made plans to marry Margaret. He left Forrest County with the intention of going to Tennessee to marry her. At no point did David plan to remain in Tennessee, and he and Margaret only stayed there for a week after the marriage ceremony and then returned to their home in Forrest County. They then lived in Forrest County for the next four years until David's disappearance.
¶ 13. Without resorting to statutory interpretation, we find that the crime was actually commenced in Forrest County as provided for under section 99-1-17. This was sufficient to allow the Forrest County Circuit Court to hear the case against David; therefore, this issue is without merit.

II. Jury instruction
¶ 14. David next claims that the trial court erred by refusing to grant defense's *985 jury instruction D-11, which reads as follows:
The Court instructs the jury that in the State of Mississippi accounts may be in the name of two or more persons, whether minor or adult, in such form that the money in the accounts are payable to either adult, or their survivors, in such money due under such accounts, and all additions thereto, shall be the property of such persons jointly with the right of survivorship. The money due under such accounts [may] be paid to, or on the order of, any one of such persons during his lifetime.
If you find that the money charged to have been the subject of the false pretenses counts was owned by both the Defendant and Margaret M. Corley (Butt), then you must find the Defendant not guilty.
According to David, D-11 properly instructed the jury on the ownership of a joint account, and the jury instructions that were given failed to take into account the fact that the money went through the couple's joint account.
¶ 15. A defendant is entitled to have the trial court give jury instructions that present his theory of the case; however, the court may deny an instruction that misstates the law, is covered elsewhere in the instructions, or is not supported by the evidence. Ladnier v. State, 878 So.2d 926, 931(¶ 20) (Miss.2004). This Court does not review jury instructions in isolation, but it will read them as a whole to determine whether the trial court properly instructed the jury. Milano v. State, 790 So.2d 179, 184(¶ 14) (Miss.2001). "When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." Id. (quoting Coleman v. State, 697 So.2d 777, 782 (Miss. 1997)).
¶ 16. While David's instruction may be a correct interpretation of a joint account, it is, nevertheless, irrelevant to the charges of false pretenses that he faced. The issue was not whether the money in the checking account was jointly owned by Margaret and David but whether he used false pretenses to convince her to allow him to withdraw funds from her IRA. The evidence was uncontradicted that Margaret was the sole owner of that account and that David did not have her permission to use its funds for his own personal gain.
¶ 17. The evidence further indicated that David told Margaret he would take the money from the IRA and invest it in an account that would provide a better return on her investment. Instead of reinvesting the money for her, however, he used $50,000 to temporarily open another account titled solely in his name and then withdrew all of the funds. He then withdrew another $7,500 of the IRA funds from the joint checking account. David did all this while Margaret expected him to fulfill his promise of opening another investment account for her retirement.
¶ 18. Proving that David deposited the funds into a joint account would not negate the false pretense charges. The ownership of the account into which the IRA funds were temporarily deposited was irrelevant to the charges, and this instruction was unnecessary. When read together, the jury instructions that were granted fairly announce the law in this case. Instruction D-11, which the judge refused to give, did not instruct the jury on any law relevant to this case; therefore, it was properly refused. We find this issue to be without merit.

III. Testimony of David's first wife
¶ 19. Lastly, David finds error with the trial court for allowing his first *986 wife, Pamela Dwyer, to testify. He argues that her testimony was inadmissible, that she was incompetent as a witness against him, and that it violated his spousal privilege. He also claims that the court allowed her to testify to irrelevant information that prejudiced his case.
¶ 20. In support of his argument, David cites Bryant v. State, 179 Miss. 739, 176 So. 590 (1937) and Bell v. State, 244 Miss. 867, 147 So.2d 624 (1962) for the proposition that testimony of a defendant's wife is inadmissible against him in a bigamy prosecution. He claims that Mississippi Code Annotated section 13-1-5 (Rev.2002) and Rule 504 of the Mississippi Rules of Evidence further support his argument.
¶ 21. Section 13-1-5 provides that, with some exceptions, one spouse is not a competent witness against the other spouse. Nevertheless, the supreme court has held that this does not prevent former spouses from testifying against each other, even relating to acts during the marriage, so long as the testimony was not privileged communication. Holden v. State, 399 So.2d 1343, 1345 (Miss.1981); Dycus v. State, 396 So.2d 23, 28 (Miss.1981).
¶ 22. In this case, David's marriage to Pam ended in May 2002 when, upon Pam's petition, the Florida court declared that David Eugene Burnett died on August 13, 1998, in the Gulf of Mexico. As such, she was his ex-wife at the time of the trial and, therefore, competent to testify against him. The information to which she testified was not privileged communication, so section 13-1-5 does not apply to exclude Pam's testimony.
¶ 23. Rule 504(b) of the Mississippi Rules of Evidence governs spousal privilege, and it provides that a person may "prevent that person's spouse, or former spouse, from testifying as to any confidential communication between that person and that person's spouse." However, Pam did not testify as to communication between David and herself, let alone a confidential communication. She testified to events surrounding her marriage and the eventual end of her marriage to David, and there was no testimony from her that could be considered a confidential communication that the trial judge should have excluded. Accordingly, Rule 504(b) did not operate to preclude Pam from testifying against David.
¶ 24. Lastly, we address David's claim that his ex-wife's testimony was irrelevant. The admission of evidence is within the discretion of the trial court. Culp v. State, 933 So.2d 264, 274(¶ 26) (Miss.2005). We will only reverse a decision on whether to admit evidence if the trial court abused its discretion. Id. We find the trial judge was within his discretion when he allowed Pam to testify to the facts relating to her marriage to David, his disappearance, and how their marriage eventually ended.
¶ 25. We find that David's ex-wife was a competent witness against him and that the judge properly admitted her testimony. This issue is without merit.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY OF CONVICTION OF COUNT I BIGAMY AND SENTENCE OF TEN YEARS; COUNT II FALSE PRETENSES AND SENTENCE OF TEN YEARS TO RUN CONCURRENTLY TO THE SENTENCE IN COUNT I; AND COUNT III FALSE PRETENSES AND SENTENCE OF TEN YEARS SUSPENDED TO RUN CONSECUTIVELY TO THE SENTENCES IN COUNTS I AND II, WITH FIVE YEARS OF POST-RELEASE SUPERVISION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL *987 COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] The appellant was indicted in the Circuit Court of Forrest County on December 6, 2005, under the name, "David Gene Burnett Butt." He had been located in Oregon a month earlier and was extradited to Mississippi under the name "David Gene Burnett," signing the waiver of extradition form with that name. As the criminal charge proceeded through the trial court, the case was styled "State of Mississippi v. David G. Burnett." In the May 25, 2006, sentencing order the style of the case was changed to read "State of Mississippi versus David Gene Burnett Butt," and this appeal was taken using that style. For simplicity's sake we will refer to the appellant as David.