IN THE SUPREME COURT OF MISSISSIPPI
NO. 2012-CP-00174-SCT

*KENTON H. McNEESE*

*v.*

*KATHERINE J. McNEESE*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/31/2011 |
| TRIAL JUDGE: | HON. EUGENE LOVE FAIR, JR. |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | KENTON H. McNEESE (PRO SE) |
| ATTORNEY FOR APPELLEE: | SHEILA HAVARD SMALLWOOD |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 04/25/2013 |
| MOTION FOR REHEARING FILED: | 05/09/2013; DENIED AND MODIFIED AT ¶33, ¶34, AND ¶35 - 08/22/2013 |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., KITCHENS AND COLEMAN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. Kenton and Katherine McNeese executed a consent agreement to an irreconcilable differences divorce, and the chancellor granted the divorce on that ground. Kenton filed a motion to reconsider, which was denied. Kenton appeals the denial of his post-trial motion to reconsider as well as the grant of divorce based on irreconcilable differences. Finding no error, we affirm the chancery court.

**Facts and Procedural History**

¶2. Kenton and Katherine ("Katye") McNeese were married on December 9, 2006. They have one child, Hattie, born in January 2009. Katye filed for divorce on October 1, 2010, alleging habitual cruel and inhuman treatment, or in the alternative, irreconcilable

differences. The parties agreed to a temporary custody agreement pending trial. On the first day of trial, the parties entered into a consent agreement to an irreconcilable differences divorce. They agreed to let the court determine child custody, visitation, support issues, division of marital assets, and alimony.

¶3. Trial was held on April 11, 2011, and June 1, 2011. The chancellor rendered an opinion on September 2, 2011, and granted the irreconcilable differences divorce pursuant to the consent agreement. He granted physical custody of Hattie to Katye, set out the guidelines for visitation, ordered Kenton to pay $588 per month for child support, and divided property between the parties; alimony and attorneys' fees were not awarded to either party.

¶4. Katye filed a Motion to Reconsider, Motion for a New Trial, or to Alter or Amend Judgment, and Motion for Stay of Proceedings to Enforce a Judgment on the ground that Kenton had failed to disclose certain items in the required financial disclosures. Kenton did not respond or file a separate motion to reconsider. A hearing on Katye's motion was held on September 29, 2011. On October 12, 2011, the court entered an order specifically addressing the issues raised in Katye's motion to reconsider, then entered an Amended Opinion and Final Judgment to make several clarifications to the original opinion.

¶5. By this time, Kenton had fired his attorney. On October 13, 2011, Kenton filed, *pro se*, a Motion to Reconsider, Motion for a New Trial, to Alter or Amend Judgment, and Motion for Stay of Proceedings to Enforce a Judgment, alleging that: (1) he was represented poorly by prior counsel; (2) Katye and others who testified on her behalf had defrauded the court through their perjured testimony; and (3) opposing counsel had violated her oath as an

2

attorney and as a municipal judge. He requested a new trial, new custody arrangements, and that costs and attorneys' fees be assigned to Katye.

¶6. At the end of October, Katye remarried her first husband, Michael Graves. Upon learning that Katye had remarried, Kenton wanted to withdraw his consent to the irreconcilable differences divorce. Between November 8 and 17, Kenton filed, *pro se*, seven subpoenas; a Motion for Contempt, Sanctions, and Relief; a Motion to Expunge Order of Withholding; a Motion to Expunge Consent Agreement to Irreconcilable Differences Divorce; and a Cross-Complaint and Counter-Complaint for Divorce. A hearing on Kenton's motion to reconsider took place on November 21, 2011. On January 4, 2012, the chancellor entered a Final Order denying Kenton's motion to reconsider and dismissing or denying all other motions on the grounds of *res judicata* and estoppel. Kenton filed a Notice of Appeal on January 30, 2012.

**Discussion**

¶7. Kenton, *pro se*, asserted ten issues on appeal, which have been summarized and reorganized for the purpose of discussion:

1. Whether the chancellor erred in granting the divorce on the ground of irreconcilable differences;

2. Whether the chancellor erred by not allowing Kenton to amend his pleading to match the evidence as allowed under Rule 15(b) of the Mississippi Rules of Civil Procedure, including the withdrawal of the irreconcilable differences consent agreement;

3. Whether the chancellor erred in not allowing evidence to be submitted at the hearing on Kenton's motion for a new trial;

4. Whether the chancellor erred in allowing withholdings from Kenton;

3

5. Whether the chancellor erred in holding Kenton in contempt and requiring him to pay attorney's fees;

6. Whether the chancellor erred in not reporting Katye's felony bigamy and perjury to the proper authorities, as she mislead the court during trial, and she remarried prior to the final disposition of the motion for a new trial;

7. Whether the chancellor erred in not determining assets or liabilities as marital or nonmarital;

8. Whether the chancellor erred in allowing questioning of Kenton's ex-wife as to matters protected under the spousal privilege;

9. Whether the chancellor erred in not reporting counsel for discipline; and

10. Whether the chancellor erred in not granting involuntary dismissal of Katye's claim due to her attorney's violation of certain rules of procedure.

Katye asserts that the majority of the issues set forth in Kenton's brief are not properly before this Court. She also maintains that the consent agreement was valid, and that the chancellor did not err in granting the divorce on the ground of irreconcilable differences or in denying Kenton's post-trial motion to reconsider.

¶8. A chancellor's determinations in an irreconcilable differences divorce will not be disturbed as long as the findings are "supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied." *Sanderson v. Sanderson*, 824 So. 2d 623, 625-26 (¶ 8) (Miss. 2002) (quoting *Kilpatrick v. Kilpatrick*, 732 So. 2d 876, 880 (¶ 13) (Miss. 1999)). Additional standards of review will be discussed as needed.

**I. Whether Kenton's appeal and the issues presented therein are properly before this Court.**

¶9. As a preliminary matter, we address Katye's assertions that a majority of Kenton's issues are not properly before the Court based on his Notice of Appeal, and that his appeal should be dismissed for his failure to file record excerpts.

**A. Notice of Appeal**

¶10. Katye asserts that most of the issues raised in Kenton's brief should not be considered because they were not designated in his Notice of Appeal and are not properly before this Court. Kenton's Notice of Appeal stated that he appealed "from the final judgment entered in this case on January 4, 2012, and the denial of the Motion for Judgment Notwithstanding the Verdict or, in the Alternative, for New Trial." As we understand it, Kenton is referring to the denial of his motion to reconsider or for a new trial, as he did not file a motion for judgment notwithstanding the verdict. Some of the issues presented on appeal were included in Kenton's motion to reconsider, but the others were included generally in his motion for contempt, motion to expunge the consent agreement, and motion to expunge the order of withholding. Those motions were not designated specifically in the Notice of Appeal. However, the chancellor's order dated January 4, 2012, generally denied those motions, and the January 4 order was designated in the Notice of Appeal.

¶11. Rule 3(c) of the Mississippi Rules of Appellate Procedure provides that a notice of appeal "shall designate as a whole or in part the judgment or order appealed from." Miss. R. App. P. 3(c). However, this Court has held that if the "statement of issues and appellant brief clearly show" that a certain order or issue is being appealed, we will consider the merits of the issue. *Fletcher v. Lyles*, 999 So. 2d 1271, 1277 (¶ 25) (Miss. 2009) (citing *K.D.F. v. J.L.H.*, 933 So. 2d 971, 974 n.2 (Miss. 2006)). *See also Herndon v. Miss. Forestry*

5

*Comm'n*, 67 So. 3d 788, 795 (¶ 19) (Miss. Ct. App. 2010). Under Rule 3(c), "[a]n appeal shall not be dismissed for informality of form or title of the notice of appeal." *Fletcher*, 999 So. 2d at 1277 (¶ 25) (quoting Miss. R. App. P. 3(c)). Because the chancellor's January 4 order generally denied Kenton's post-trial motions, which included the issues raised on appeal, and in light of this Court's standard set forth in *Fletcher*, we will consider the merits of each of Kenton's issues on appeal, unless they are otherwise procedurally barred.

### B. Record Excerpts

¶12.    Katye asserts that Kenton's appeal should be dismissed for failure to comply with Rule 30 of the Mississippi Rules of Appellate Procedure, which requires parties to file record excerpts with briefs on appeal. Katye is correct that Kenton failed to file record excerpts with his initial brief. However, upon recognition of the error, Kenton filed record excerpts and corrected the mistake. Katye did not provide any support for her assertion that the appeal should be dismissed for failure to file record excerpts, and "this Court does not consider unsupported assignments of error." *O.W.O. Investments, Inc. v. Stone Inv. Co., Inc.*, 32 So. 3d 439, 446 (¶ 19) (Miss. 2010); *Touchstone v. Touchstone*, 682 So. 2d 374, 380 (Miss. 1996).

### II. Whether the consent agreement was valid, and whether the chancellor erred in granting the divorce on irreconcilable differences.

¶13.    Kenton claims that the parties' consent agreement to an irreconcilable differences divorce was invalid because it was not properly notarized and because the agreement was not signed by counsel. On that basis, he argues the chancellor erred in granting the divorce on the ground of irreconcilable differences. Katye claims that the consent agreement is not

subject to appellate review, but if this Court reviews it, it met the statutory requirements for validity.

¶14. Mississippi Code Section 93-5-2 pertains to consent agreements for irreconcilable differences divorces and provides the following:

> (3) If the parties are unable to agree upon adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between them, they may consent to a divorce on the ground of irreconcilable differences and permit the court to decide the issues upon which they cannot agree. Such consent must be in writing, signed by both parties personally, must state that the parties voluntarily consent to permit the court to decide such issues, which shall be specifically set forth in such consent, and that the parties understand that the decision of the court shall be a binding and lawful judgment. Such consent may not be withdrawn by a party without leave of the court after the court has commenced any proceeding, including the hearing of any motion or other matter pertaining thereto. . . .

Miss. Code Ann. § 93-5-2(3) (Rev. 2004). According to Section 93-5-2, a consent agreement for an irreconcilable differences divorce must (1) be in writing, (2) be signed by both parties, (3) state that the parties voluntarily consent to have the court decide issues upon which they cannot agree, (4) specifically set forth those issues upon which the parties cannot agree, and (5) state that the parties understand that the court's decision will be binding. *Id. See also Cassibry v. Cassibry*, 742 So. 2d 1121, 1124 (¶ 9) (Miss. 1999). The consent agreement in question was in writing, signed by both parties, and contained the required statements that the parties voluntarily consented to have the court determine the issues listed therein and that the parties understood that the court's decision would be a "binding and lawful judgment." Kenton's claim that the document is invalid because it was not notarized properly[1] and not

---

[1] Regardless, the notary and seal used were sufficient, because chancery clerks are by statute ex-offico notaries public and are permitted to use the seal of their office to notarize

7

signed by the attorneys is without merit, because Section 93-5-2 does not require the consent agreement to be notarized or signed by an attorney.

¶15. Kenton asserts that the attorneys were required to sign the consent agreement in accordance with Mississippi Rule of Civil Procedure 11(a) and Uniform Chancery Court Rule 5.03. Rule 11(a) applies to motions and pleadings and requires the signature of the attorney filing the document. Miss. R. Civ. P. 11(a). Rule 5.03 requires counsel for all parties to approve and sign a "consent judgment" before presenting it to the chancellor.[2] Unif. Chancery Court R. 5.03. The consent agreement at issue is not a motion, pleading, or a consent judgment; therefore, the rules Kenton cited are not applicable, and an attorney's signature was not required. The consent agreement complied with the requirements of Section 93-5-2 and was valid.

¶16. If Kenton wanted to withdraw or expunge the agreement, according to Section 93-5-2(3), he was required to obtain leave of court to do so. Miss. Code Ann. § 93-5-2(3) (Rev. 2004). *See also **McDuffie v. McDuffie**, 21 So. 3d 685, 689 (¶ 7) (Miss. Ct. App. 2009). The agreement itself also included language requiring the parties to obtain leave of court to withdraw the agreement. Kenton did not file a motion for leave of court as required; he waited until after the amended final judgment had been entered to file a motion to expunge the consent agreement. Kenton's attempt to withdraw or expunge the consent agreement after

documents. Miss. Code Ann. § 25-33-17 (Rev. 2010).

[2] A consent judgment is a final judgment, more like an agreed order, which "must be approved and signed by counsel for all parties . . . before being presented to the Chancellor for his signature." Unif. Chancery Court R. 5.03. A consent agreement is like a stipulation of facts, by which the parties indicate how they wish to proceed on certain issues, but leave other issues to the chancellor and await his final judgment.

the divorce decree had been entered did not invalidate the agreement. *See **Jernigan v. Young***, 61 So. 3d 233, 236 (¶ 14) (Miss. Ct. App. 2011). "[W]avering on whether a divorce should be entered may often occur and does not invalidate the divorce. . . . What is important is that agreement be validly expressed on the day that the chancellor is considering the issue." ***Id.*** (quoting ***Sanford v. Sanford***, 749 So. 2d 353, 356 (¶ 11) (Miss. Ct. App. 1999)). The chancellor did not err in granting the divorce on irreconcilable differences because the consent agreement was valid on the day the order of divorce was entered.

### III. Whether the chancellor erred in denying Kenton's motion to amend the pleadings.

¶17.    Kenton asserts that the chancellor erred in denying his motion to amend the pleadings to reflect the evidence, as allowed under Mississippi Rule of Civil Procedure 15(b), including the withdrawal of the irreconcilable differences consent agreement. The record contains no "motion to amend the pleadings"; accordingly, Rule 15 does not apply. If Kenton is referring to the motion to expunge the consent agreement, that claim was addressed in the previous section – the agreement was valid, and his attempt to withdraw the agreement was improper. If Kenton is referring to his cross-complaint/counterclaim, that document was untimely filed and was not properly before the court. A judge has discretion in allowing a counterclaim to be submitted. Miss. R. Civ. P. 13(e), (f). However, a request for an order must be made in a written motion stating the relief sought and the grounds for such relief. Miss. R. Civ. P. 7(b)(1). Kenton filed his counterclaim thirty-six days after the final judgment was entered, without a motion asking the court to allow him to amend the pleadings or to allow the untimely counterclaim. Therefore, the counterclaim was not properly before the court, and

9

the chancellor did not abuse his discretion in refusing to allow it. Kenton's claim that the chancellor erred in denying his motion to amend the pleadings to reflect the evidence is without merit.

### IV. Whether the chancellor erred in denying Kenton's post-trial motion for reconsideration.

¶18. After the chancellor's amended opinion and final judgment had been entered on October 12, 2011, Kenton immediately filed a Motion to Reconsider, Motion for a New Trial, to Alter or Amend Judgment, and Motion for Stay of Proceedings to Enforce a Judgment. After a hearing, the chancellor denied the motion, which was the basis of Kenton's appeal. Naturally, it is Katye's position that the chancellor was correct in denying Kenton's post-trial motion for reconsideration or a new trial. We agree.

¶19. In his motion to reconsider, Kenton alleged the chancellor made several errors in the findings of fact and conclusions of law. Kenton also asserted that Katye and her witnesses made numerous misrepresentations and intentionally misled the court. The chancellor found those claims to be without merit. This Court will not overturn the chancellor's finding of fact unless it was "manifestly wrong or clearly erroneous." *Duncan v. Duncan*, 774 So. 2d 418, 419 (¶ 4) (Miss. 2000).

¶20. Rule 60(a) pertains to the correction of clerical mistakes in a judgment or order, and Rule 60(b) provides for amendment to an order on the basis of fraud, misrepresentation, mistake, or newly discovered evidence. Miss. R. Civ. P. 60(a), (b). Rule 60(b) motions are reserved for "exceptional circumstances," and a party is not entitled to relief simply because he is unhappy with a judgment. *Perkins v. Perkins*, 787 So. 2d 1256, 1261 (¶ 9) (Miss.

10

2001) (citing *King v. King*, 556 So. 2d 716, 722 (Miss. 1990)). "[A] Rule 60(b) motion should be denied where it is merely an attempt to relitigate a case." *Askew v. Askew*, 699 So. 2d 515, 519 (¶ 17) (Miss. 1997) (citing *Stringfellow v. Stringfellow*, 451 So. 2d 219, 221 (Miss. 1984)). Under Rule 59, the trial judge has discretion to grant a new trial or to amend the judgment "if convinced that a mistake of law or fact has been made, or that injustice would attend allowing the judgment to stand." *Rogers v. Morin*, 791 So. 2d 815, 822 (¶ 22) (Miss. 2001) (quoting *Mayoza v. Mayoza*, 526 So. 2d 547, 549 (Miss. 1988)). A Rule 59 motion for a new trial also may be based on newly discovered evidence.

> A motion for a new trial based on new evidence is an extraordinary motion, and the requirements of the rule must be strictly met. The motion may not be granted unless (1) the evidence was discovered following the trial; (2) due diligence on the part of the movant to discover the new evidence is shown or may be inferred; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; (5) the evidence is such that a new trial would probably produce a new result.

*Smullins v. Smullins*, 77 So. 3d 119, 125 (¶ 23) (Miss. Ct. App. 2011) (quoting *Moore v. Jacobs*, 752 So. 2d 1013, 1017 (¶ 18) (Miss. 1999)). Review of a trial judge's denial of a Rule 60 motion for relief or a Rule 59 motion for a new trial is limited to abuse of discretion. *Perkins*, 787 So. 2d at 1261 (¶ 9) (internal citations omitted).

¶21. At the hearing on Kenton's motion for a new trial, Kenton discussed a myriad of issues that he called "fraud" on the court. In actuality, Kenton took that opportunity to point out each fact in the chancellor's findings of fact with which he disagreed. The transcript from the hearing indicates that the chancellor listened to each of Kenton's points and allowed Kenton to make each of his arguments in detail – regardless of how frivolous or repetitive. As to almost every point, Kenton admitted that he knew of the evidence at the time of trial.

11

Kenton's main issue was a retirement account in the amount of $1,332, which Katye had not disclosed in her Rule 8.05 disclosures. Kenton claimed that Katye's failure to disclose the account constituted fraud upon the court. However, he admitted that the account was "an insignificant amount in [his] opinion." Katye's attorney maintained that Katye was not aware of the retirement account.

¶22. First, we note that Kenton did not explain why he did not know about or could not have discovered the retirement account prior to trial. Second, the amount of the account is insignificant and does not merit reopening the case. Applying the case of *Trim v. Trim*, 33 So. 3d 471 (Miss. 2010), the chancellor explained that, to be significant enough to warrant reopening a case, false information on a Rule 8.05 disclosure "must be intentionally and substantially false." The chancellor found that the retirement account was likely overlooked, and it was not significant enough to reopen the trial and would not warrant a change in the prior adjudications of the court. The chancellor's decision was not an abuse of his discretion.

¶23. In his final order entered January 4, 2012, the chancellor noted that all of the issues raised in Kenton's post-trial motions were either supposed clarifications of his interpretation of the facts of the case, had been addressed in detail in the chancellor's order, or both. The chancellor refused to consider any arguments or evidence that could have been raised earlier. The chancellor addressed each of Kenton's arguments in turn, finding them to be without merit and to have no effect on his prior judgment. Kenton failed to introduce new, material evidence that could not have been known prior to trial that would have had an effect on the outcome, which would warrant a new trial under Rule 59. Kenton failed to prove fraud or other misconduct that would warrant relief under Rule 60(b). Kenton's motion was "merely

12

an attempt to relitigate" the case, and the chancellor was correct to deny it. *See Askew*, 699 So. 2d at 519 (¶ 17). The chancellor did not abuse his discretion in denying Kenton's motion to reconsider or for a new trial.

## V. Whether the chancellor erred in not allowing evidence to be submitted at the hearing on Kenton's motion for a new trial.

¶24. Kenton asserts that the chancellor erred by not allowing evidence to be submitted at the hearing on his motion for a new trial. At the beginning of the hearing, Kenton specifically asked the judge, "Can I present exhibits at this time also?" The judge responded, "Sure." At one point, Kenton was discussing an exhibit, and the chancellor went so far as to ask Kenton if he wanted to bring the exhibit up to him. Further, most of the things Kenton discussed already were in the record. There is no evidence that the chancellor did not allow new evidence to be introduced, and this issue is without merit.

## VI. Whether the chancellor erred in allowing withholdings from Kenton.

¶25. Kenton asserts that the chancellor erred in allowing withholdings from his paycheck because he was not in arrears. Mississippi Code Section 93-11-103 provides, "Upon entry of any order for support by a court of this state . . . issued *or* modified *or* found to be in arrears . . . the court entering such order *shall* enter a separate order for withholding which shall take effect immediately." Miss. Code Ann. § 93-11-103(2) (Rev. 2004) (emphasis added). Section 93-11-103(2) is mandatory and requires that a separate order for withholding be entered following the entry of an order for support. This applies to all orders *issued or modified*, not only to those found to be in arrears. *See Meeks v. Meeks*, 757 So. 2d 364, 369 (¶ 25) (Miss. Ct. App. 2000) ("Because of the mandatory language of the statute on

13

withholding orders . . . we find clear error in failing either to enter such an order or to give reasons as to why it was not justified."); ***Curtiss v. Curtiss***, 781 So. 2d 142, 146 (¶ 14) (Miss. Ct. App. 2000) (An earlier version of the statute "required a withholding order only in the event of a delinquency or on the obligor's request[,]" but the statute containing the mandatory language went into effect July 1, 1999, and it "requires a withholding order from the inception."). The chancellor correctly complied with Section 93-11-103(2) when he entered the order for withholding several days after the order for support was entered, and this issue is without merit.

**VII. Whether the chancellor erred in holding Kenton in contempt and assessing attorney's fees to him.**

¶26. After the chancellor's original opinion and final judgment was entered on September 2, 2011, Katye filed a motion to reconsider. A hearing on Katye's motion was held on September 29, and Katye's attorney asked that Kenton be held in contempt of court for failing to comply with the court's earlier temporary order and for perjuring himself under oath, based on his failure to make certain financial disclosures about the former marital home, which Katye had been awarded in the divorce. The chancellor found that Kenton had made intentional misrepresentations to the court. Kenton asserts that the chancellor erred by holding him in contempt and requiring him to pay Katye's attorney's fees associated with the hearing. A trial judge's award of attorneys' fees is reviewed under the abuse of discretion standard, and the award of attorneys' fees must be supported by credible evidence. ***Miss. Power & Light Co. v. Cook***, 832 So. 2d 474, 486 (¶ 39) (Miss. 2002).

14

¶27. As a preliminary matter, Kenton claims that he "was not allowed to be heard" at the September 29 hearing and that he was denied due process because "the matter was discussed ex parte with counsel." There is no evidence that the attorneys had any ex parte communication with the chancellor, but taking Kenton's claim as true, his attorney was present to participate in any discussions. Kenton did not provide any evidence to support this claim, and "this Court does not consider unsupported assignments of error." *O.W.O. Investments*, 32 So. 3d at 446 (¶ 19); *Touchstone*, 682 So. 2d at 380.

¶28. In her motion and at the hearing, Katye alleged that Kenton had failed to disclose several issues pertaining to taxes, mortgage interest payments, and rental of the former marital home. Based on the evidence presented, the chancellor found that Kenton had failed to disclose "the extent of his failure to comply" with the court's temporary order, and that he intentionally had misrepresented the "status and net value" of the home. The chancellor ordered Kenton to make certain repayments to Katye and to pay $750 toward her attorney's fees, finding that Kenton was in contempt of court for his misrepresentation of the status of the property and for his failure to comply with the temporary order.

¶29. There is no evidence that the chancellor abused his discretion in holding Kenton in contempt and ordering him to pay $750 in attorney's fees. Kenton had failed to comply with the court's temporary order from the time of the trial on June 1 until the chancellor's original opinion was entered on September 2. The chancellor found that the previously entered temporary order was still in effect after the trial in June until his final order was entered, thus, Kenton was required to make all payments included in the temporary order during that time.

15

We find that there was substantial evidence to support the chancellor's decision, and he did not abuse his discretion in assessing Kenton $750 in attorney's fees.

### VIII. Whether the chancellor erred by not reporting Katye's alleged felony bigamy and perjury.

¶30. According to Kenton, Katye remarried her first husband after the chancellor's order granting the divorce was entered, but while Kenton's motion to reconsider was pending. Upon learning that Katye had remarried, Kenton sought to withdraw his consent to the irreconcilable differences divorce, obtain a divorce on fault grounds, have Katye held in contempt of court, and have her charged with perjury and bigamy. The chancellor found no merit in Kenton's allegations and took no further action. Kenton asserts that the chancellor erred in failing to report Katye's alleged felony bigamy and perjury to the proper authorities.

### A. Perjury

¶31. When judges are aware of perjury, they have a duty to consider sanctions or report the perjury to the district attorney when necessary. *See Jones v. Jones*, 995 So. 2d 706, 711-12 (¶¶ 13-18) (Miss. 2008). Kenton's allegations of perjury relate to Katye's testimony about her relationship with her first husband, Michael. On June 1, Katye testified that she and Michael were not in a relationship, but she was trying to give him a second chance regarding being a father to Cameron. Katye testified that Michael wanted to have a relationship with her, he was attending a family Sunday school class with Katye and Cameron, and he was "trying to prove himself" to Katye. Katye said she did not have any "intentions" regarding a relationship with him. Kenton speculates that Katye must have lied about her relationship with Michael, because Katye and Michael were married in October, and a relationship could

16

not have developed in that time frame. Other than his own opinion, Kenton provides no support for his allegations of perjury against Katye.

¶32. This Court gives deference to a chancellor's findings in regard to witness testimony, because the chancellor is able to observe and "personally evaluate the witnesses' testimony and the parties' behavior." *Gable v. Gable*, 846 So. 2d 296, 299 (¶ 12) (Miss. Ct. App. 2003) (citing *Sobieske v. Preslar*, 755 So. 2d 410, 413 (¶ 11) (Miss. 2000)). *See also Woodell v. Parker*, 860 So. 2d 781, 785 (¶ 10) (Miss. 2003) (deference given to trial court's determination of "the weight and credibility of witnesses when there is conflicting testimony"). The chancellor heard the witnesses at trial, reviewed the evidence, listened to the arguments on the parties' motions for reconsideration, and concluded that Kenton's allegations were without merit. In his final order, the chancellor addressed Katye's remarriage by stating "Katye had relied on the two judgments called 'Final'" when she remarried her first husband. The chancellor did not abuse his discretion by not issuing sanctions or reporting the alleged perjury to the district attorney. This issue is without merit.

**B. Bigamy**

¶33. Kenton asserts that, because he had filed a motion for reconsideration or a new trial, the judge's order of divorce was stayed and was not final, so Katye's remarriage constituted bigamy. The title of Kenton's motion to reconsider requested a stay of proceedings or a new trial, but he did not set forth any arguments in that regard within the motion. The chancellor never granted the requested stay, and the motion was denied summarily when the motion for reconsideration or a new trial was denied. Rule 62(b) provides that "[i]n its discretion . . . the court *may* stay the execution of or any proceedings to enforce a judgment pending the

17

disposition of a motion to alter or amend a judgment made pursuant to Rule 59, or of a motion for relief from a judgment or order made pursuant to Rule 60(b) . . . ." Miss. R. Civ. P. 62(b) (emphasis added). The rule does not provide for an automatic stay upon the filing of a motion for reconsideration, and none was granted. However, a motion for a new trial does create an automatic stay under Rule 62(a). If Kenton's motion properly argued for a new trial, then an automatic stay should have been granted.

¶34.    In his motion, Kenton asked the court to "reconsider and/or correct and amend its judgment, place a stay on the judgment, void the judgment, call for a new trial, and modify the temporary order . . . ." Since Kenton sought several different, mutually inconsistent types of relief, this Court must look at the content of the motion to determine what he actually requested. *See **Bruce v. Bruce***, 587 So. 2d 898, 902 (Miss. 1991) (when ambiguous, a court should disregard the label or title of a pleading or motion and look to its content). In the body of the motion, Kenton made no arguments that would support a motion for a new trial. "Trial courts have authority to grant a new trial, where, in the exercise of their sound discretion, they regard such a verdict as being contrary to the substantial weight of the evidence." ***Coho Res., Inc. v. Chapman***, 913 So. 2d 899, 908 (¶ 28) (Miss. 2005). Kenton made no arguments regarding the weight of the evidence considered by the chancellor. Instead, he made allegations of fraud upon the court by Katye and generally requested that the court change its decision. Despite the fact that a Rule 59(a) new trial was requested in the heading of the motion, the other relief prayed for, as well as the content of the motion itself, supports the conclusion that the motion in question was actually a Rule 59(e) motion for reconsideration or to alter or amend the judgment of the chancery court.

18

¶35. Accordingly, no stay was in place that would have rendered the chancellor's final judgment of divorce invalid. Kenton's allegation of bigamy is without merit. Further, Kenton provides no support for the argument that it was the chancellor's duty to report Katye's alleged bigamy to proper authorities, and "this Court does not consider unsupported assignments of error." *O.W.O. Investments*, 32 So. 3d at 446 (¶ 19); *Touchstone*, 682 So. 2d at 380.

## IX. Whether the chancellor erred in not determining assets or liabilities as marital or nonmarital.

¶36. Kenton asserts that, in the distribution of assets and liabilities, the chancellor failed to determine whether the assets and liabilities were marital or nonmarital. Kenton did not raise this in any of his numerous post-trial motions or at the hearing on his motion for a new trial. Issues raised for the first time on appeal are procedurally barred. *Wilburn v. Wilburn*, 991 So. 2d 1185, 1191-92 (¶¶ 13-14) (Miss. 2008). "The well-recognized rule is that a trial court will not be put in error on appeal for a matter not presented to it for decision." *McDonald v. McDonald*, 39 So. 3d 868, 885 (¶ 54) (Miss. 2010) (quoting *Mills v. Nichols*, 467 So. 2d 924, 931 (Miss. 1985)). Regardless, this issue is without merit, as the chancellor did address marital and nonmarital property in his distribution of property.

## X. Whether the chancellor erred in allowing questioning of Kenton's ex-wife as to matters protected under the spousal privilege.

¶37. Kenton's ex-wife, Christa Saulters, testified on Kenton's behalf as a character witness. On cross-examination, Katye's attorney asked Christa why she and Kenton divorced, and Kenton's attorney objected on relevancy grounds. Katye's attorney argued that, because Christa was a character witness, questions about Kenton's character should be allowed. The

19

chancellor agreed and overruled the objection. Kenton asserts that the chancellor erred in allowing Christa to testify regarding matters protected under the spousal privilege.

¶38.    The spousal privilege is codified in Mississippi Code Section 13-1-5, which provides that spouses generally are not competent witnesses against each other.[3] *See* Miss. Code Ann. § 13-1-5 (Rev. 2002).  However, Section 13-1-5 "does not prevent former spouses from testifying against each other, even relating to acts during the marriage, so long as the testimony was not privileged communication." ***Butt v. State***, 986 So. 2d 981, 986 (¶ 21) (Miss. Ct. App. 2007) (citing ***Holden v. State***, 399 So. 2d 1343, 1345 (Miss. 1981); ***Dycus v. State***, 396 So. 2d 23, 28 (Miss. 1981)).  The husband-wife privilege prevents a "person's spouse, or former spouse, from testifying as to any confidential communication between that person and that person's spouse." Miss. R. Evid. 504(b).  "A communication is confidential if it is made privately by any person to that person's spouse and is not intended for disclosure to any other person."  Miss. R. Evid. 504(a).

---

[3] Mississippi Code Section 13-1-5, provides:

> Husbands and wives may be introduced by each other as witnesses in all cases, civil or criminal, and shall be competent witnesses in their own behalf, as against each other, in all controversies between them. Either spouse is a competent witness and may be compelled to testify against the other in any criminal prosecution of either husband or wife . . . . But in all other instances where either of them is a party litigant the other shall not be competent as a witness and shall not be required to answer interrogatories or to make discovery of any matters involved in any such other instances without the consent of both.

Miss. Code Ann. § 13-1-5 (Rev. 2002).

¶39. A former spouse's testimony as to nonconfidential matters is not protected by the spousal privilege. *See **Butt***, 986 So. 2d at 986 (¶ 21). In ***Butt***, the Court of Appeals held that Rule 504(b) did not preclude an ex-wife from testifying against her ex-husband where she "did not testify as to communication . . . let alone a confidential communication" between herself and her ex-husband, rather, she testified about the "events surrounding her marriage and the eventual end of her marriage[.]" ***Id.*** at 986 (¶ 23). In the case at hand, Christa was called by Kenton as a character witness. The only objection came on cross-examination when Christa was asked why she and Kenton divorced. Like the ex-wife in ***Butt***, Christa testified "to events surrounding her marriage and the eventual end of her marriage." ***Id.*** Christa did not mention specific conversations or statements made by Kenton.

¶40. Kenton's attorney objected to Christa's testimony about the reason for their divorce as irrelevant. Because part of the reason for their divorce involved Kenton's treatment of Christa's child, her testimony was relevant as to Kenton's character and child custody. Further, the relevance and admissibility of evidence is within the sound discretion of the chancellor. ***Jackson v. Jackson***, 732 So. 2d 916, 924 (¶ 14) (Miss. 1999); ***Terrain Enters., Inc. v. Mockbee***, 654 So. 2d 1122, 1131 (Miss. 1995)). This Court will not reverse the chancellor's decision "unless abuse of that discretion is shown." ***Terrain Enters.***, 654 So. at 1131. We find that Christa did not testify to any confidential communications that would have been protected under Mississippi Rule of Evidence 504 or Mississippi Code Section 13-1-5, and the chancellor did not abuse his discretion in allowing Christa to testify.

## XI. Whether the chancellor erred in failing to report judicial and attorney misconduct.

21

¶41. Kenton alleges wrongdoing by Katye's attorney, Sheila Smallwood, and he asserts that the chancellor erred in not reporting Smallwood for discipline as required under the Code of Judicial Conduct. He also asserts that the chancellor erred in not granting involuntary dismissal of Katye's claim under Mississippi Rule of Civil Procedure 41(b) due to her attorney's violations of "these rules."[4]

¶42. Kenton's allegations of wrongdoing by Smallwood include: that she knowingly included false statements in the findings of fact submitted to the chancellor; she continued to represent Katye while knowing Katye had committed perjury; and she failed to sign the consent agreement. Kenton filed a complaint against Smallwood with the Mississippi Bar, which was dismissed for lack of clear and convincing evidence.[5] Therefore, Kenton's

---

[4] In regard to "these rules," Kenton specifically cited Mississippi Rules of Civil Procedure 5, 6, 11, and 62; Uniform Chancery Court Rule 5.03; and "many Rules of Evidence and Rules of Professional Conduct."

[5] Katye's record excerpts included a letter from the Mississippi Bar notifying Smallwood that the matter against her had been dismissed and that the decision was not appealable. The letter is dated April 13, 2012, which was after Kenton's Notice of Appeal was filed, so it is not in the record. This Court takes judicial notice of the letter and the status of the matter against Smallwood before the Mississippi Bar. *See* Miss. R. Evid. 201. This Court often takes notice of the status of cases in other courts or agencies involving the same parties or related to the matter at hand. *See **Miss. Bar v. Gautier***, 83 So. 3d 1280, 1281 (¶ 3) (Miss. 2011) (taking judicial notice of the fact that no appeal had been filed); ***Miss. Comm'n on Judicial Performance v. DeLaughter***, 29 So. 3d 750, 756 n.4 (Miss. 2010) (record did not include evidence of DeLaughter's conviction; Court took judicial notice of the record in another case before it that included a federal court's judgment convicting DeLaughter); ***Smith v. Dorsey***, 599 So. 2d 529, 548 (Miss. 1992) (Supreme Court took judicial notice that final judgment had been entered in interpleader action in federal court involving the funds at issue). *See also **Opoka v. Immigration & Naturalization Serv.***, 94 F.3d 392, 394-95 (7th Cir. 1996) (citing the power of courts to take judicial notice, at any stage of the proceedings, of relevant decisions of other courts and administrative agencies that are directly related to the matter at hand) (internal citations omitted).

allegations of attorney misconduct against Smallwood are barred under the doctrine of *res judicata*.

¶43.   Regarding alleged judicial misconduct, Kenton claims that, while acting in her capacity as a municipal judge, Smallwood obtained information about Kenton being charged with driving under the influence and used that information against him in the divorce proceedings.  Kenton's DUI would have been public information, and Smallwood would have been able to access the information regardless of her position as a municipal judge.  The chancellor made a finding that Smallwood did not commit any wrongdoing.  This Court will not overturn the chancellor's finding of fact unless it was "manifestly wrong or clearly erroneous." ***Duncan***, 774 So. 2d at 419 (¶ 4).  Nothing in the record suggests that the chancellor's finding was erroneous.  Kenton's allegations of judicial misconduct against Smallwood are without merit.

¶44.   Finally, Kenton alleges that the chancellor erred in not reporting Smallwood for alleged wrongdoing and in failing to dismiss the case.  Because the chancellor found no evidence of wrongdoing by Smallwood, he had no reason to report her or to dismiss the case.  Kenton's allegations of judicial and legal misconduct by Katye's attorney and by the chancellor are without merit.

**Conclusion**

¶45.   As discussed herein, this Court finds that each of Kenton's issues is procedurally barred, without merit, or both.  We affirm the chancellor's grant of divorce on the ground of irreconcilable differences. Finding no error, we also affirm the chancellor's denial of Kenton's motion for reconsideration and other post-trial motions.

23

¶46.    **AFFIRMED.**

    **WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR.**